# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **A.G.1, a minor, by and through her Guardian Ad Litem, SERENA URIBE, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CITY OF FRESNO, an entity, CITY OF FRESNO POLICE DEPARTMENT, and entity; ZEBULON PRICE, an individual police officer with CITY OF FRESNO POLICE DEPARTMENT, and DOES 2-10, inclusive,**<br><br>**Defendants.** | **CASE NO. 1:16-CV-01914-LJO-SAB**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 24) |

## I. INTRODUCTION

This case arises from the shooting death of Raymond Angel Gonzalez ("Gonzalez" or "the Decedent") in the City of Fresno. The Decedent's five minor children – A.G.1, A.G.2, A.G.3, A.G.4 (through Guardian Ad Litem Serena Uribe), and R.A.G.J. (through Guardian Ad Litem Amalia Alcanter) – as well as his mother, Alice Gonzalez (collectively, "Plaintiffs"), bring claims individually and on behalf of the Decedent's estate. Plaintiffs bring the instant civil rights action against the City of Fresno ("City"), City of Fresno Police Department ("FPD"), and FPD Officer Zebulon Price ("Price") (collectively, "Defendants"), alleging excessive force, violation of substantive due process, and municipal liability under 42 U.S.C. § 1983, as well as state law causes of action for assault, battery,

1

negligence, and wrongful death.[1]  Before the Court is Defendants' motion for summary judgment.  The Court deems the matter appropriate for resolution without oral argument.  *See* E.D. Cal. Civ. L.R. 230(g).

## II. BACKGROUND

### A.  FACTUAL BACKGROUND[2]

Officer Price was working a gang detail in a marked Fresno police car on March 23, 2016.  JUF 1.  When Price first saw Gonzalez, he was not committing a crime.  PUF 2.  Defendant Price attempted to make contact with Gonzalez.  JUF 2; PUF 3.  The video shows that Gonzalez began to run away from Price, and that Price began to pursue him.  BCV 0:02; PUF 4.  Gonzalez pitched his backpack during the foot pursuit.  JUF 4; BCV 0:04.  Later in the pursuit, as Gonzalez was running through an alley, he pitched a handgun toward a building, but it fell to the ground.  JUF 5; PUF 5; BCV 0:30.  Price fired a shot at Gonzalez from a distance of approximately 10 feet away, but the shot missed Gonzalez.  PUF 7; BCV 0:32.

Gonzalez then fell on the ground on his stomach near or on the handgun.  BCV 0:33-0:34; UF 6.  Gonzalez then rotated on to his right side and raised his hands in the air.  BCV 0:34-0:35.  When he did so, he revealed a handgun on the ground immediately under where his chest had been.  *Id.*  Gonzales then reached his hand in the direction of the gun two additional times, BCV 0:36, 0:38, touching the handgun the second time.

---

[1] Plaintiffs agreed to voluntarily dismiss the fifth cause of action for failure to provide medical care under 42 U.S.C. § 1983 prior to Defendants' filing this motion.

[2] The facts set forth in this section are drawn from undisputed facts submitted by the parties ("JUF"), ECF No. 24-1, Plaintiffs' undisputed facts ("PUF") to the extent that Defendants do not object to them, ECF No. 24-1, and undisputed evidence depicted on the body camera video ("BCV"), Declaration of Bruce D. Praet, Ex. 1, ECF No. 24-3.  The Court also viewed Plaintiffs' submission of "enhanced" video footage.  Declaration of Humberto Guizar, Ex. A, ECF No. 25-2.  The "enhanced" video significantly alters the view of the body camera footage at crucial moments.  For example, the edited footage zooms in at the point at which the Decedent can be viewed touching the gun on the ground (0:38 in the original BCV and 1:53 in the enhanced video) so that the gun and the Decedent's hand are not visible.  Similarly, the video zooms in on the footage of the Decedent reaching in his waistband so that it is *less* clear (2:42 in the enhanced video).  The "enhanced" video is misleading, perhaps intentionally, and the Court therefore disregards it.

| | |
|---|---|
| 1 | Price ordered Gonzalez to lie on the ground with his head facing the fence, away from Price. |
| 2 | BCV 0:46-0:48.  Gonzalez eventually complied, turning his head toward the fence and placing his |
| 3 | stomach on the ground.  BCV 0:52.  However, almost immediately, Gonzalez began rotating his body |
| 4 | back and forth and grabbing at his waistband.  BCV 0:54-0:56.  He then suddenly rotated his body so |
| 5 | that his back side was towards the ground and he was facing the Price.  BCV 0:57.  Price discharged his |
| 6 | weapon simultaneously, striking Gonzalez in the chest.  BCV 0:57.  Gonzalez died from the gunshot |
| 7 | wound injury.  PUF 1. |

**B.     PROCEDURAL HISTORY**

Defendants moved for summary judgment on all causes of action on July 12, 2018.  ECF No. 24.  Plaintiffs filed an opposition on August 3, 2018, ECF No. 25, to which Defendants filed a reply on August 7, 2018, ECF No. 27.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper in this court, and the matter is ripe for review.

### III. STANDARD OF DECISION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations.  *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at 249-50.  A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

## IV. DISCUSSION

In their motion, Defendants argue that Price's use of lethal force was objectively reasonable as a matter of law because he was responding reasonably to an immediate threat to his safety. Plaintiffs counter that there is a material dispute of fact about whether Price was reasonably threatened by Gonzalez's conduct.

### A. FOURTH AMENDMENT: EXCESSIVE FORCE

#### 1. Legal Standard

Section 1983 of Title 42 of the United States Code provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by a person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 638-39 (1980). To succeed in asserting the § 1983 claims, Plaintiffs must demonstrate that the action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). As the moving party, Defendants bear the initial burden on summary judgment of pointing out "an absence of evidence to support [Plaintiffs'] case." *Celotex*, 477 U.S. at 325. It is also Defendants' burden to prove that they are entitled to qualified immunity. *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

Here, the parties agree that Defendants acted under color of state law, but dispute whether they

4

violated the Decedent's Fourth Amendment rights.[3]

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted); *see also United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997) ("For purposes of the Fourth Amendment, a seizure occurs when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen.").

The Fourth Amendment requires law enforcement officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them. *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). The reasonableness of a particular use of force is determined through a three-step inquiry. *Graham v. Connor*, 490 U.S. 386, 396 (1989). In the *Graham* analysis, a court must "first assess the quantum of force used to arrest [the plaintiff] by considering 'the type and amount of force inflicted.'" *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (citations omitted).

The second step is to determine the government's countervailing interests at stake. *Graham,* 490 U.S. at 396. "Relevant factors to this inquiry include, but are not limited to, 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (quoting *Graham*, 490 U.S. at 396). The most important of these three factors is whether the suspect poses an immediate threat to the safety of the officers or others.

---

[3] Plaintiffs' Fourth Amendment claims are brought on behalf of the Decedent's estate. Plaintiffs do not have standing to sue under the Fourth Amendment individually.

5

*Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). These factors, however, are not exhaustive. *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013). Because "there are no per se rules in the Fourth Amendment excessive force context," *Mattos*, 661 F.3d at 441, courts are to "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citations omitted). "Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given[,] and whether it should have been apparent to officers that the person they used force against was emotionally disturbed." *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) (citations omitted).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)); *see id.* at 396-97 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment.") (citations omitted). This is because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

Finally, in the third step, a court must weigh in balance "whether the degree of force used was warranted by the governmental interest at stake." *Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001). In this way, a court may determine whether the force used was "greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002); *see also Young v. County of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011) (a court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable" (quoting *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003)). But "even where some force is justified, the amount actually used may be excessive." *Id.* at 853. The question in all cases is

whether the use of force was "objectively reasonable in light of the facts and circumstances confronting" the arresting officers. *Graham*, 490 U.S. at 397 (internal quotation marks omitted). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted).

"[T]he reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (internal quotation marks and citations omitted). The Ninth Circuit has cautioned that excessive force cases pose "a particularly difficult problem" where cases involve the suspect's death, because "the witness most likely to contradict [an officer's] story" is not available to testify. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 1994) (internal quotation marks and citations omitted). In such cases the evidence should be carefully examined "to determine whether the officer's story is internally consistent and consistent with other known facts." *Id.* at 794-95 (internal quotation marks and citations omitted); *see also Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (explaining that "we must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts" (internal quotation marks and brackets omitted)). The Ninth Circuit has held that "summary judgment should be granted sparingly" in such cases. *See id.* (citing *Glenn*, 673 F.3d at 871).

**2.** **Application**

**a.** **Relevant Undisputed Facts**

Although the Court construes disputed facts in the light most favorable to the non-moving party

7

(Plaintiffs), the Court need not disregard the video evidence where it conflicts with the non-moving party's version of events. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that the district court should have disregarded the non-moving party's version of the facts in light of clear video evidence to the contrary and instead "viewed the facts in the light depicted by the videotape"). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts." *Id.* Where the videotape evidence captures material facts relevant to an excessive force claim, the non-moving party's wholly inconsistent contentions do not create "genuine" disputes of fact. *Id.*

For the purposes of determining whether there is a material dispute of fact as to whether Officer Price used excessive force, the Court relies primarily on the following facts which are apparent from the body camera footage. *Id.* The video shows that Gonzalez began to run away from Defendant Price, and that Defendant Price began to pursue him. BCV 0:02; PUF 4. Later in the pursuit, as Gonzalez ran through an alley, he pitched a handgun toward a building, but it fell to the ground. UF 5; PUF 5; BCV 0:30. Gonzalez fell on the ground on his stomach near or on the handgun. BCV 0:33-0:34; UF 6. Gonzalez then rotated on to his right side and raised his hands in the air. BCV 0:34-0:35. When he did so, he revealed a handgun on the ground immediately under where his chest had been. *Id.* Defendant then reached his hand in the direction of the gun two additional times, BCV 0:36, 0:38, touching the gun the second time. Officer Price ordered Gonzalez to lie on the ground with his head facing the fence, away from Officer Price. BCV 0:46-0:48. Gonzalez turned his head toward the fence and placing his stomach on the ground. BCV 0:52. However, almost immediately, Gonzalez began rotating his body back and forth and grabbing at his waistband as though reaching for something there. BCV 0:54 - 0:56. He then suddenly rotated his body so that his back side was towards the ground and he was facing the Officer Price. BCV 0:57. Officer Price discharged his weapon simultaneously, striking Gonzalez in the chest. BCV 0:57. Gonzales succumbed to his injuries.

## b. Nature And Quality Of The Intrusion

Officer Price deployed deadly force against Gonzalez. "The intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). "The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a 'fundamental interest in his own life' and because such force 'frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.'" *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) (quoting *Garner*, 471 U.S. at 9). This high quantum of force must be measured against the *Graham* factors in the second step of the inquiry

## c. Government Interests At Stake

Applying the *Graham* factors in the second step of the inquiry, the first *Graham* factor (the severity of the crime at issue) weighs in Plaintiffs' favor. It is undisputed that the Decedent was not engaged in apparent criminal activity when he was <u>initially</u> approached by law enforcement. PUF 2. However, the third *Graham* factor (whether the subject was actively resisting arrest or attempting to evade arrest by flight) weighs heavily against Plaintiffs. The Decedent was actively fleeing law enforcement, and was in possession of a handgun, which he had been handling (or had just attempted to throw, yet at all relevant times continued to have immediate access to) at the time that Officer Price fired the first shot (which missed).[4] He also failed to comply promptly (or ultimately at all) with instructions from Officer Price after he was on the ground, such as instructions not to touch the gun, and instructions to position himself with his face on the ground next to the fence.

The second, and most important, *Graham* factor – whether the Decedent posed an immediate threat to the safety of the officers or others sufficient to justify the use of deadly force – weighs in

---

[4] At the beginning of the BCV, the Decedent can be seen pitching a backpack. The backpack later turned out to have a dissembled assault rifle in it. The officer had no way of knowing what was in the backpack at the time that the Decedent dropped it, and therefore the fact that it contained an assault rifle could not have factored in to the officer's decision to deploy deadly force less than a minute later after pursuing the Decedent. The presence of the assault rifle is irrelevant to this Court's analysis of the officer's decision to use deadly force.

Defendants' favor, is indisputable, and is critical to the Court's ultimate determination in this case. *See Mattos*, 661 F.3d at 441 (explaining that the second *Graham* factor is the most important). The Decedent was in possession of a firearm while law enforcement was pursuing him. Officer Price was aware that the Decedent was in possession of a handgun because he observed the Decedent attempt to throw it at a building during the foot pursuit and he observed it on the ground immediately adjacent to (and accessible to) where the Decedent fell and saw the Decedent reach for and touch it. As importantly, the Decedent reached for the area of his waistband in defiance of orders from Officer Price, and then turned toward Officer Price suddenly. As he turned, he was fatally shot by Officer Price.

In *Cruz v. City of Anaheim*, the district court concluded that the decedent had reached for his waistband and thus that the use of deadly force was justified. 765 F.3d 1076, 1079 (9th Cir. 2014). The Ninth Circuit reversed the district court's grant of summary judgment, noting that that district courts cannot, in the deadly force context, grant summary judgment solely on the unrefuted but self-serving testimony of the officers involved. *Id.* However, the Ninth Circuit explained that it would be "*unquestionably reasonable* for police to shoot a suspect . . . if he reaches for a gun in his waistband, *or even if he reaches there for some other reason*." *Id.* (emphasis added). They noted that in the question on summary judgment was not whether the "police s[aw] [decedent] reach for his waistband," but whether "any reasonable jury [could] find it more likely than not that [decedent] *didn't* reach for his waistband." *Id.* Unlike *Cruz*, where the evidence that the decedent reached for his waistband was disputed, here it is not. The body camera video clearly shows that the Decedent reached for his waistband and turned towards Defendant Price suddenly at almost the exact moment that he was shot. When the Decedent reached for his waistband and then turned suddenly towards Officer Price, it was reasonable for Officer Price to believe that the Decedent posed an immediate threat sufficient to justify the use of deadly force. *George*, 736 F.3d at 838 ("If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat."). In determining that summary judgment was inappropriate, the court in *Cruz*

concluded that, "[t]o decide this case a jury would have to answer just one simple question: Did the police see Cruz reach for his waistband? If they did, they were entitled to shoot; if they didn't, they weren't." 765 F.3d at 1079. Here, no reasonable jury could conclude that Gonzalez did not reach for his waistband. Without obstruction, the video clearly shows that he did.

Another recent Ninth Circuit case illustrates the same principle. In *Easley v. City of Riverside*, the court upheld a district court's decision granting summary judgment where the facts considered in the light most favorable to the decedent showed that the decedent was fleeing officers when he reached into his pocket and pulled out an object (which turned out to be a gun) and then took the object and moved it across his body "in a motion similar to throwing a Frisbee" two to four seconds before he was shot. 890 F.3d 851, 857 (9th Cir. 2018). Under these facts, the court concluded that the officer's use of deadly force was "objectively reasonable." *Id.* As in *Easley*, when the Decedent reached for his waistband and made a sudden movement towards Officer Price, it was reasonable as a matter of law for Officer Price to deploy excessive force.

The fact that the Decedent did not have a weapon in his waistband and did not raise a weapon to Price when he turned around does not change the analysis, the danger nor the response.[5] The Ninth Circuit's assessment in *Cruz* that it was "unquestionably reasonable" for an officer to shoot a suspect reaching for his or her waistband under threatening circumstances *did not hinge* on whether or not there

---

[5] Although neither party cited the case in their briefs, it is important to distinguish the Ninth Circuit's recent decision in *Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017). In that case, the decedent was a 13-year old boy who was carrying what appeared to be an AK-47 in the middle of the day in a residential neighborhood. After the officers yelled "drop the gun," the decedent began to turn around "naturally in a clockwise direction" while still holding the gun. 871 F.3d at 1010-11. The parties agreed that the gun barrel might have raised slightly as the decedent turned, but was still not raised enough to threaten the officers, and the officers did not see the decedent's hand on the trigger. *Id.* at 1011. One officer fired and fatally struck the decedent. The court held, on these facts, that a reasonable jury could find that the use of lethal force was excessive, and that the officer reasonably should have known that the application of deadly force under the circumstances was excessive under the Fourth Amendment. The circumstances surrounding that incident differ in important ways from the facts of this case. First, in this case Gonzales was actively fleeing police, while the facts in *Gelhaus*, taken in the light most favorable to the decedent, indicated that the decedent was just walking down the street unaware that the police were pursuing him. Second, the Decedent reached twice for a handgun on the ground near him. A reasonable officer could infer from this gesture that the decedent posed a threat. Likewise, in this case, the Decedent reached for his waistband and then made a furtive gesture in turning towards the officer. The totality of the undisputed or indisputable (based on video evidence) circumstances in this case, unlike those at play in *Gelhaus*, reasonably suggested that the Decedent posed a threat.

was actually a weapon in the waistband. 765 F.3d at 1079 (noting that the use of deadly force would be reasonable whether an individual reached for a gun at his waistband or "*even if he reaches there for some other reason*." (emphasis added)). Moreover, as the Supreme Court noted in *Graham*, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." 490 U.S. at 396-97. Defendant Price's "application of deadly force was a proportional response because the Fourth Amendment does not require" a police officer to be "omniscien[t ], and absolute certainty of harm need not precede [an officer's] act of self-protection." *Easley*, 890 F.3d at 857 (citation and internal question mark omitted).

Plaintiffs argue that there is a triable issue of fact as to both whether force was necessary and whether deadly force was excessive under the circumstances. They contend that the Decedent was "scared" and "confused" during the encounter and was not behaving as though he was a threat to the officer. However, the Decedent's state of mind is irrelevant to the determination of whether the officer's deployment of excessive force was reasonable under the circumstances. *See Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1193 (C.D. Cal. 2015) (concluding that the decedent's state of mind is irrelevant to the excessive force determination and noting that "the relevant inquiry is 'whether the officers' actions are 'objectively reasonable' *in light of the facts and circumstances confronting them . . . .*'" (quoting *Graham*, 490 U.S. at 397)). Moreover, whether the Decedent made the threatening movements because he was panicked and scared or for some other reason, those movements were objectively threatening and it was reasonable for Officer Price to interpret them as such.

Plaintiffs also argue that "[w]hile Defendant Price claims that he was in immediate fear for his life, this is, at the very least, a triable issue of fact." (ECF No. 25 at 12.) If Defendant Price's self-serving testimony was the only evidence that the shooting was justified, the Court would agree with Plaintiffs. However, the Court does not base its determination that Price's use of deadly force was reasonable on Price's testimony or his subjective belief. Rather, the Court asks whether Defendant

Price's decision to use deadly force was *objectively* reasonable as a matter of law. The undisputed body camera evidence showing that the Decedent reached for his waistband before making a sudden movement to face Officer Price, viewed in conjunction with Ninth Circuit law parsing analogous factual circumstances, lead the Court to conclude that Defendant Price's actions were objectively reasonable under the totality of the circumstances.

Plaintiffs contend that there is more than one interpretation of the body camera video, and posit that the following questions are unresolved disputed material issues of fact: "What was Gonzalez doing when he stumbled near the gun? Why does Price say that Gonzalez is digging his hands into his pockets when the video shows they are at his waistline? Why did Price say "*get your hands out of your pockets*" after Price has shot Gonzalez in the chest and Gonzalez is showing him his hands?" ECF No. 25 at 12. The problem with Plaintiffs' argument is that, to the extent that any of these are disputed factual contentions, not one of them is *material*. As Plaintiffs acknowledge in their questions, the Decedent, who had already handled one weapon in the officer's presence just moments before, had that weapon immediately next to, and within easy reach of the decedent, reached for his waistband immediately before turning toward the officer. Given those circumstances, combined with the other factors known to the officer, it was objectively reasonable for the officer to fear that he was in immediate danger, and no reasonable trier of fact could return a verdict in favor of the decedent's position based on this irrefutable evidence. The other questions raised by Plaintiffs do nothing to mitigate those circumstances. The fact that Gonzalez stumbled near the gun does not change the fact that he reached for his waistband and turned suddenly. The fact that Defendant Price referred to the Decedent's pockets instead of his waistband before firing has no bearing on the reasonableness of the officer's determination that he was in immediate danger just before the shooting. Officer Price's statement to the Decedent to move his hands from his pockets *after* the shooting is similarly irrelevant to the essential determination of objective reasonableness in this case.

Lastly, Plaintiffs argue that the use of force was not justified because Defendant Price did not

give the Decedent sufficient warning before deploying deadly force and did not properly consider alternatives to deploying excessive force. In support of this proposition, Plaintiffs cite *Nelson v. City of Davis*, which noted that "the giving of a warning or the failure to do so is a factor in applying the *Graham* balancing test. 685 F.3d 867, 882 (9th Cir. 2012). Here, Defendant Price deployed excessive force at a moment that he objectively and reasonably feared for his immediate safety. The law does not require officers to stop and give a warning before using excessive force under those circumstances, nor are they required "to use the least intrusive degree of force possible" when confronted with what reasonably appears to be a deadly threat. *Id.* at 882; *see also George*, 736 F.3d at 838 ("If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat.").

### d. **Reasonableness of Force**

Weighing the nature and quality of the intrusion against the governmental interest at stake, Defendants have met their burden of showing that Officer Price's use of force was reasonable under the totality of the circumstances and that no reasonable trier of fact could return a verdict in favor of the plaintiffs. Defendants' motion for summary judgment on Plaintiffs' excessive force claim is GRANTED.

## B. **Remaining Claims And Arguments**

The Court need not reach Defendants' qualified immunity argument. Because the Court concludes that there was no constitutional violation here as a matter of law, the issue is moot. *Bartko v. Flick*, 39 F.3d 1186 (9th Cir. 1994) ("The issue of qualified immunity does not arise where there was no violation of a statutory or constitutional right.").

Plaintiffs' remaining § 1983 claims in this case – for Fourteenth Amendment deprivation of substantive due process and municipal liability – also fail because Plaintiffs cannot establish them without establishing an underlying constitutional violation for excessive force. *See Los Angeles v. Heller*, 475 U.S. 796 (1986) (if there is no underlying constitutional violation, a municipal claim under §

1983 must also fail); *Estate of Lopez ex rel. Lopez v. Torres*, 105 F. Supp. 3d 1148, 1160 (S.D. Cal. 2015) ("If the court finds that 'no underlying dependent constitutional deprivation' was demonstrated, the family relations substantive due process claim also must fail" (quoting *Corales v. Bennett*, 567 F.3d 554 n.11 (9th Cir. 2009)). Likewise, Plaintiffs' state law claims rest on the same facts as Plaintiffs' Fourth Amendment excessive force claim, and therefore fail as a matter of law. *See, e.g.*, *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013) (applying same reasonableness standard to determine whether officer was negligent in using deadly force). Since the Court determined that Defendant Price did not commit a constitutional violation as a matter of law, the remaining claims fail and the Court GRANTS summary judgment for Defendants on those remaining claims.

## V. CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED.** The matter is dismissed and the Clerk of the Court is **ORDERED** to close the case.

IT IS SO ORDERED.

Dated: __**August 21, 2018**__  _____/s/ Lawrence J. O'Neill_____
UNITED STATES CHIEF DISTRICT JUDGE