1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   A.G.1, a minor, by and through her          No.  1:16-cv-01914-NONE-SAB
     Guardian Ad Litem, SERENA URIBE, et
12   al.,

13                      Plaintiffs,               ORDER DENYING DEFENDANTS'
                                                  MOTION FOR SUMMARY JUDGMENT
14          v.
                                                  (Doc. No. 49)
15   CITY OF FRESNO, an entity, CITY OF
     FRESNO POLICE DEPARTMENT, an
16   entity; ZEBULON PRICE, an individual
     police officer with CITY OF FRESNO
17   POLICE DEPARTMENT, and DOES 2–
     10, inclusive,
18
                       Defendants.
19

20

21                         **INTRODUCTION**

22          This case arose from the shooting death of Raymond Angel Gonzales ("decedent") in the

23   City of Fresno.  The decedent's five minor children—A.G.1, A.G.2, A.G.3, A.G.4 (through

24   *guardian ad litem* Serena Uribe), and R.A.G.J. (through *Guardian ad litem* Amalia Alcanter)—as

25   well as his mother, Alice Gonzales (collectively, "plaintiffs"), brought claims individually and on

26   behalf of the decedent's estate.  Specifically, plaintiffs brought a civil rights action against the

27   City of Fresno ("City"), City of Fresno Police Department ("FPD"), and FPD Officer Zebulon

28   Price ("Price") (collectively, "defendants,") alleging excessive force, violation of substantive due

                                      1

process, municipal liability under 42 U.S.C. § 1983, and state law causes of action for assault, battery, negligence, and wrongful death.  Following a prior grant of summary judgment which was upheld by the Ninth Circuit, only the negligence claims remain.  Defendants bring this motion for summary judgment on the negligence claim on the grounds that there is no genuine issue of material fact left unsettled.

For the reasons discussed below, defendant's motion will be denied.

## BACKGROUND

**A.      Factual Background**

The material facts of this case are not in dispute.  The evidence before the court consists of a Joint Statement of Undisputed Facts ("JUF"), (Doc. No. 24-1), Plaintiffs' Undisputed Facts ("PUF"), (Doc. No. 24-1), and evidence depicted on the body camera video ("BCV"), (Declaration of Bruce D. Praet, Ex. 1, Doc. No. 24-3).

Defendant Price was working a gang detail in a marked Fresno police car on March 23, 2016.  (JUF 1.)  When defendant Price first saw the decedent, the decedent was with another individual and was not committing a crime.  (JUF 3; PUF 2.)  Defendant Price attempted to make contact with the decedent.  (JUF 2; PUF 3.)  The body camera video shows that the decedent and his companion began to run in opposite directions, and defendant Price began to pursue the decedent.  (BCV 0:02; PUF 4.)  The decedent pitched his backpack during the foot pursuit.  (JUF 4; BCV 0:04.)  Later in the pursuit, as the decedent was running through an alley, he pitched a handgun toward a building, but it fell to the ground.  (JUF 5; PUF 5; BCV 0:30.)  At this time, defendant Price fired his first shot toward the decedent from a distance of approximately 10 feet away; this shot missed the decedent.  (PUF 7; BCV 0:32.)

The decedent then fell on the ground on his stomach near or on the handgun.  (BCV 0:33–0:34; JUF 6.)  The decedent then rotated on to his right side and raised his hands in the air.  (BCV 0:34–0:35.)  When he did so, he revealed a handgun on the ground immediately under where his chest had been.  *Id.*  The decedent then reached his hand in the direction of the gun two additional times, (BCV 0:36 and 0:38), touching the handgun the second time.

/////

Defendant Price ordered the decedent to lie on the ground with his head facing the fence, away from defendant Price.  (BCV 0:46–0:48.)  The decedent eventually complied, turning his head toward the fence and placing his stomach on the ground.  (BCV 0:52.)  However, almost immediately, the decedent began rotating his body back and forth with one hand buried in or grabbing at his waistband.  (BCV 0:54–0:56.)  He then suddenly rotated his body so that his back side was towards the ground and he was facing defendant Price.  (BCV 0:57.)  Defendant Price discharged his weapon as the decedent pulled his hand out of his waistband toward defendant Price.  Defendant Price's shot struck the decedent in the chest, (BCV 0:57), and the decedent later died from the gunshot wound injury.  (PUF 1.)

**B.    Procedural Background**

On August 22, 2018, the previously assigned district judge granted summary judgment in favor of defendants on all counts.  (Doc No. 29.)  On May 6, 2020, the Ninth Circuit Court of Appeals affirmed summary judgment in favor of defendants on all claims except the negligence claim.  The Ninth Circuit agreed that defendant Price's use of force was objectively reasonable as a matter of law such that decedent's Fourth Amendment rights were not violated.  (Doc. No. 42 at 3.)

As to plaintiffs' remaining state-law negligence claim, the Ninth Circuit vacated and remanded the grant of summary judgment for further consideration by this court.  Specifically, the Ninth Circuit instructed this court to consider whether defendant Price's tactical conduct and decisions underlining the use of deadly force may give rise to negligence liability under California law and the test set out by *Hayes v. Cty of San Diego*, 57 Cal. 4th 622 (2013).  The court therefore revisits defendants' motion for summary judgment with respect to plaintiffs' negligence claim.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The court must draw all reasonable inferences in favor of the nonmoving party, and it may

not make credibility determinations. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Furthermore, where video footage of an incident is available, district courts are permitted to "view the facts in the light depicted by the video[]" to the extent that the nonmoving party's version of the incident is blatantly contradicted by the video. *Scott v. Harris*, 550 U.S. 372, 381 (2007).

A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

## DISCUSSION

In *Hayes*, the California Supreme Court confirmed that law enforcement officers have a duty to use reasonable care when employing force and that plaintiffs alleging negligence against police must demonstrate (1) the defendant officer(s) breached that duty and (2) that the breach was the proximate or legal cause of the resulting injury. *Hayes*, 57 Cal.4th at 629. *Hayes* further established that liability may attach to negligent pre-shooting tactics by police officers under California law "if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Id.* In this way, California's negligence standard considers a wider scope of conduct than the Fourth Amendment. *See id.* at 632, 639 (holding that the standard for negligence under California law is

1   "broader than federal Fourth Amendment law" because it includes consideration of an officer's

2   conduct prior to moment when force is applied).

3       For example, in *Grudt*, an officer in plain clothes carrying a double-barreled shotgun

4   approached a car. *Grudt v. City of Los Angeles*, 2 Cal. 3d 575 (1970). The driver, possibly

5   believing he was being robbed or attacked, accelerated toward a second plainclothes officer.

6   Both officers opened fire on the driver, killing him. When examined in isolation, the deadly force

7   used by the officers in *Grudt* appeared reasonable—they were defending themselves against an

8   accelerating vehicle; however, the shooting's reasonableness was called into question when the

9   officers' pre-shooting conduct was considered. *Hayes*, 57 Cal. 4th at 630 (discussing *Grudt*, 2

10  Cal. 3d). By not identifying themselves and approaching the vehicle in such a threatening way,

11  the officers in *Grudt* unnecessarily and negligently escalated the situation. *See id*.

12      Here, the Ninth Circuit has confirmed that defendant Price's use of deadly force was

13  reasonable when examined through the narrower Fourth Amendment lens; the only remaining

14  question is whether defendant Price's *pre-shooting* actions, when considered under the totality of

15  the circumstances, have the potential to render his ultimate conduct negligent under California

16  law. Importantly, the reasonableness of defendant Price's pre-shooting conduct "must be judged

17  from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

18  hindsight. *Hayes*, 57 Cal. 4th at 632 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

19  Plaintiffs argue, in keeping with the opinion of their expert Roger Clark, that defendant Price's

20  use of deadly force was negligent because, prior to the shooting, defendant Price failed to

21  "contain" the decedent, failed to "remain in cover," and did not give the decedent enough time to

22  process defendant Price's commands. (Doc. No. 25 at 30.) Expert Clark further opines that

23  defendant Price's decision to engage in a solo foot pursuit of the decedent was negligent because

24  it was a "violation of policy and training and the shooting would never have happened" without

25  that foot pursuit. (Doc. No. 50 at 8–9.) Defendant Price counters that his pre-shooting conduct

26  fell "within the range of conduct that is reasonable under the circumstances" such that he did not

27  breach his duty of care to the decedent. Defendant Price also argues that plaintiffs cannot

28  demonstrate a causal link between his pre-shooting conduct and the ultimate use of force.

Defendant Price is correct that "California law does not require officers to 'choose the *most* reasonable action or the conduct least likely to cause harm;'" instead, "law enforcement personnel have a degree of discretion as to how they choose to address a particular situation." *J.A.L. v. Santos*, 724 F. Appx. 531, 534 (9th Cir. 2018)[1] (internal citations omitted) (emphasis added).  However, district courts in this circuit have taken a broad view as to the evidence that can raise a genuine dispute of material fact regarding the extent of that discretion in determining whether summary judgment is precluded.

For example, in *Han v. City of Folsom*, two parents called 911 to request police assistance with their son, the decedent, who they believed needed psychiatric help and might be a danger to himself.  *Han v. City of Folsom*, No. 2:10-CV-00633-MCE, 2015 WL 1956521, at *1–2 (E.D. Cal. Apr. 29, 2015), *rev'd and remanded sub nom*. *Young Han v. City of Folsom*, 695 F. App'x 197 (9th Cir. 2017).  When police arrived at the home, the decedent was in his bedroom; police were aware that a 3 to 4-inch camping knife was also in the room.  Officers, at the direction of the decedent's parents, opened the decedent's bedroom door, and stepped into the doorway.  *Id*.  The decedent was holding the knife and demanded that officers exit his bedroom.  Officers repeatedly commanded the decedent to drop the knife before using non-lethal force (a Taser) in an attempt to disarm the decedent.  *Id*.  The decedent continued to move toward the officers, ignoring their commands to drop his weapon.  *Id*. at *2.  One of the officers responded by shooting the decedent, killing him.  *Id*.  The decedent's family then sued the officers for Fourth Amendment violations as well as negligence.  *Id*.

The trajectory of *Han* tracks closely with this case.  There, the district court first granted summary judgment in favor of the defendant officers on both the Fourth Amendment and state negligence claims using the same test for both.  And, as here, the Ninth Circuit affirmed summary judgment with respect to the plaintiffs' Fourth Amendment claim before reversing and remanding the case for further consideration of the negligence claim in light of the decision in *Hayes*.  *See Han v. City of Folsom*, 551 F. App'x 923, 926 (9th Cir. 2014).  On remand, the *Han* plaintiffs

---

[1]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    produced an expert report suggesting that the defendant officers were negligent in not seeking

2    cover or distancing themselves from the decedent once they saw that he was armed.

3         The district court again granted summary judgment in favor of the defendants on the

4    grounds that an expert disagreement with officer actions does not render their actions

5    unreasonable, and that "[p]laintiffs cannot avoid summary judgment 'by simply producing an

6    expert's report that an officer's conduct leading up to a deadly confrontation was imprudent,

7    inappropriate, or even reckless." *Han*, 2015 WL 1956521 at *7 (internal citations omitted).  The

8    district court further noted that an expert considering "alternative actions to be more appropriate

9    in hindsight does not render an officer's behavior unreasonable," and concluded that summary

10   judgment was appropriate because the plaintiffs had not cited any caselaw or produced other

11   evidence demonstrating that the officer's actions may have been unreasonable.  *Id*.  On appeal,

12   the Ninth Circuit again vacated the grant of summary judgment on the grounds that the plaintiff

13   had tendered "expert evidence that the police actions were not reasonable under the totality of the

14   circumstances under generally accepted police practices."  *Young Han v. City of Folsom*, 695 F.

15   App'x 197, 199 (9th Cir. 2017).

16        Though perhaps plaintiffs (and their expert) could have been more detailed in describing

17   exactly why defendant Price's pre-shooting actions were negligent here, the Ninth Circuit has

18   underscored that evaluation of such actions—especially in the context of police shootings—is

19   best left to the jury.  The undersigned concludes that in light of the evidence before the court on

20   summary judgment which has been recounted above, defendants' motion must be denied.

21                                    **CONCLUSION**

22        For the reasons explained above, defendant's motion for summary judgment (Doc. No.

23   11) is denied.

24   IT IS SO ORDERED.

25   Dated:  __**September 30, 2021**__            _____

26                                                UNITED STATES DISTRICT JUDGE

27

28

                                        7