UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.G.1, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF FRESNO, et al.,<br><br>　　　　Defendants. | Case No.  1:16-CV-1914-JLT-SAB<br><br><u>ORDER SETTING SCOPE OF TRIAL</u> |

This case is set for jury trial scheduled to begin on June 21, 2023. The parties agree that the sole issue for trial is Plaintiffs' state law negligence claim, but there is disagreement as to the scope of that claim. The Court ordered supplemental briefing at the pretrial conference on February 13, 2023. For the reasons explained below, the scope of trial will include all circumstances surrounding and materially applicable to the shooting in the case, including preshooting conduct and the shooting itself.

**BACKGROUND**

The facts of this case are laid out in the Court's prior orders. (Docs. 29, 42, 55.) In brief, Fresno Police Department Officer Zebulon Price shot and killed decedent Raymond Angel Gonzalez after a foot chase in March 2016. Gonzalez's family members brought the instant suit and alleged excessive force, violation of substantive due process, municipal liability under 42 U.S.C. § 1983, and state law causes of action for assault, battery, negligence, and wrongful death.

1

Relying in large part on the body camera video of the incident, this Court granted Defendants summary judgment as to all claims in August 2018. (Doc. 29.) On appeal, the Ninth Circuit agreed that defendant Price did not violate the decedent's Fourth Amendment rights, because Price's deadly use of force was "objectively reasonable" under the balancing test set forth in *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, the Ninth Circuit reversed and remanded the grant of summary judgment as to plaintiff's state law negligence claim on the grounds that the district court improperly applied the Fourth Amendment standard to the negligence claim. (Doc. 42 at 4.) The panel noted that the Fourth Amendment analysis is "narrower" and "plac[es] less emphasis on preshooting conduct" than the proper analysis applicable to the negligence claim. (Doc. 42 at 4, citing *Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018) and *Hayes v. City of San Diego*, 57 Cal.4th 622, 639 (2013)) (internal quotations omitted). On remand, this Court denied Defendants' motion for summary judgment as to the remaining negligence claim. (Doc. 55.) The negligence claim is the sole remaining claim currently scheduled for resolution via jury trial beginning June 21, 2023.

The parties disagree as to the ultimate scope of the trial as to the negligence claim, and each has submitted targeted briefing on that issue. (Docs. 77–80.) Defendants argue that because the Ninth Circuit has already held that the shooting itself was "objectively reasonable" as a matter of law, the jury should be permitted to consider only evidence concerning whether Officer Price's *preshooting* conduct was negligent. Plaintiffs argue that the jury should be shown "all the evidence," including footage of the shooting itself, to determine whether Price's *overall* conduct was negligent in the totality of the circumstances. (Doc. 78 at 2.) In other words, Plaintiffs see the preshooting conduct as one factor impacting the reasonableness of the entire interaction, and Defendants argue that the reasonableness of the preshooting conduct is the *only* factor remaining for jury decision. Accordingly, Defendants request that the Court "narrowly limit evidence, jury instructions and any special verdict solely to the issue of determining whether Plaintiffs have met their burden of establishing that any pre-shooting tactics of Officer Price were negligent" such that the jury "not be permitted to address whether the use of deadly force at the moment it was applied was objectively reasonable." (Doc. 77 at 5.)

2

**DISCUSSION**

The facts of this case are remarkably similar to those in *Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013), a case in which the California Supreme Court discussed state law negligence liability for police conduct in detail. The plaintiff in *Hayes*, via guardian ad litem, sued the County of San Diego and two officers for the shooting death of her father. The plaintiff alleged Fourth and Fourteenth Amendment claims, and one state claim alleged negligence as to the confrontation with the decedent. The interaction between the officers and the decedent was preceded by a call from neighbors who heard screaming in the decedent's home. Upon arrival, the decedent's girlfriend informed the officers that the decedent had been suicidal earlier in the day, and the girlfriend was concerned for the decedent's safety. The two officers entered the home to determine whether the decedent was a danger to himself. *Hayes*, 57 Cal.4th at 626. The officers found the decedent in the kitchen with a large knife. The officers ordered the decedent to show his hands, then opened fire when the decedent walked toward them with the knife raised in his right hand.

The federal district court granted summary judgment in favor of defendants on all claims. The court found that it was objectively reasonable for the officers to conclude that the decedent posed a "significant threat of death or serious physical injury to themselves or others," which justified their use of deadly force under the Fourth Amendment. *Hayes*, 57 Cal.4th at 627. Analyzing the state negligence claims separately, the district court rejected the plaintiff's argument that the officers negligently provoked the dangerous situation and held that the officers owed no duty of care with respect to preshooting conduct and decisions. Essentially, because the shooting was reasonable in light of the decedent approaching with a knife, the district court held that the officer's preshooting conduct could not give rise to negligence liability.

On appeal, the Ninth Circuit asked the California Supreme Court to weigh in as to "[w]hether under California negligence law, sheriff's deputies owe a duty of care to a suicidal person when preparing, approaching, and performing a welfare check on him." *Hayes v. County of San Diego*, 658 F.3d 867, 868 (9th Cir. 2011). The California Supreme Court explicitly declined to answer that question. Instead, it rephrased the inquiry as "[w]hether under California

3

1 negligence law, liability can arise from tactical conduct and decisions employed by law

2 enforcement preceding the use of deadly force." *Hayes*, 57 Cal.4th at 630.  It did so because the

3 Ninth Circuit's phrasing of the issue:

> "focuse[d] in isolation on events that preceded the shooting . . . not on the shooting itself.  Thus, it implicitly divides[d]the encounter . . . into two parts, suggesting that defendants here might have breached two separate duties. The first duty would be to prepare, approach, and perform a welfare check on a suicidal person in a reasonable manner, a duty that may or may not exist. The second duty would be to use deadly force in a reasonable manner".

*Hayes*, 57 Cal.4th at 630.

The California Supreme Court emphasized that this division of the encounter was improper because the case only involved a single, indivisible cause of action that sought recovery for a single wrong: the shooting itself.  It further explained:

> Because plaintiff did not allege a separate injury from the preshooting conduct of law enforcement personnel, the preshooting conduct is only relevant here to the extent it shows, as part of the totality of circumstances, that the shooting itself was negligent. Thus, a final determination that the shooting was not negligent would preclude plaintiff from pursuing a separate theory of liability based on the preshooting conduct alone . . .
>
> Through [restating the question, the Court] "sought to avoid any misleading reference to a separate preshooting duty (not at issue here), and we put the focus on whether liability for the unreasonable use of deadly force by a peace officer can be based on preshooting conduct.

*Hayes*, 57 Cal. 4th at 631. Thus, Defendants' assertion that a state negligence analysis permits "consideration of an officer's duty to act reasonably with respect to preshooting tactics and conduct" misstates *Hayes*'s conclusions.  (Doc. 77 at 4.)  *Hayes* made clear that where preshooting conduct did not cause plaintiff any injury independent of the injury resulting from the shooting, "the reasonableness of the officers' preshooting conduct should not be considered in isolation.  Rather, it should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable." *Hayes*, 57 Cal.4th at 632.  In other words, the preshooting contact should be considered as "part of the totality of the circumstances surrounding the fatal shooting" in a negligence claim. *Hayes*, 57 Cal.4th at 637.

In this way, a negligence analysis is broader than the Fourth Amendment.  The Fourth

4

1   Amendment "tends to focus more narrowly than state tort law on the moment when deadly force
2   is used, placing less emphasis on preshooting conduct." *Hayes*, 57 Cal. 4th at 638 ("The Fourth
3   Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under
4   tort law, and negligent acts do not incur constitutional liability") (internal quotations and citations
5   omitted).

6         *Hayes*'s discussion of *Grudt v. City of Los Angeles*, 2 Cal. 3d 575 (1970), provides further
7   instruction. There, an officer in plain clothes was carrying a double-barreled shotgun when he
8   approached a car. The driver, possibly thinking he was being robbed or attacked, accelerated the
9   car towards a second plainclothes officer. The driver was killed when both officers opened fire.
10  As described by *Hayes*:

11  > Significantly, the shooting in *Grudt* appeared justified if examined in
12  > isolation, because the driver was accelerating his car toward one of
    > the officers just before the shooting. Nevertheless, we concluded that
    > the totality of the circumstances, including the preshooting conduct
13  > of the officers, might persuade a jury to find the *shooting* negligent.

14  *Hayes*, 57 Cal. 4th at 629 (emphasis added).

15        In sum, according to *Hayes*, the applicable question in a state law negligence claim for an
16  officer-involved shooting is not whether the preshooting conduct is itself negligent; it is whether
17  the preshooting conduct renders the shooting *itself* negligent. The Court's prior order denying
18  Defendants' motion to dismiss reflects this standard. (Doc. 55 at 5, defining the remaining
19  question for trial as whether defendant Price's preshooting actions "have the potential to render
20  his *ultimate conduct* negligent under California law") (emphasis added).

21        Defendants' arguments to the contrary are unavailing. Aside from misstating *Hayes*'s
22  conclusions, the defense relies on *Los Angeles v. Mendez*, in which the Supreme Court ruled that
23  uses of force deemed reasonable under the Fourth Amendment cannot later become *un*reasonable
24  by way of additional Fourth Amendment violations that preceded the use of force. (Doc. 77 at 4,
25  citing *Mendez*, 137 S. Ct. 1537, 1547 (2017).) But, as Defendants acknowledge, *Mendez* only
26  analyzed whether *Fourth Amendment* claims could be rendered unreasonable by way of preceding
27  conduct.

28        Somewhat alternatively, Defendants appear to argue that the jury should be informed of

the prior Fourth Amendment reasonableness finding and instructed that they can only find negligence liability if defendant Price's preshooting conduct "completely alter[s] or off-set[s] all other reasonable factors" as found by the Ninth Circuit. In support, Defendants briefly claim that the Ninth Circuit's prior Fourth Amendment reasonableness finding is the "law of the case" which must be followed in this proceeding. (Doc. 77 at 5.)

"Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1650 (2013) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)). The Ninth Circuit has held that the law of the case doctrine applies to both legal conclusions and decisions regarding factual issues. *See Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1096–97 (9th Cir. 1994). "For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition." *Jingles*, 702 F.3d at 499.

Here, the Ninth Circuit did not make explicit findings; instead, it held that the district court "did not err" in its overall conclusion that the shooting was reasonable by Fourth Amendment—not state law negligence—standards. Similarly, the district court's legal conclusions that were affirmed by the Ninth Circuit were Fourth Amendment conclusions not relevant to the remaining negligence claim. However, to the extent that the prior order granting summary judgment (Doc. 29) made specific factual findings necessary to the Court's judgment, those factual findings are binding and not open to reexamination at trial.[1]

**CONCLUSION**

For the reasons discussed above, the scope of trial will include all circumstances surrounding and materially applicable to the shooting in the case—including preshooting conduct and the shooting itself—except those facts material to the Court's judgment in its prior order, (Doc. 29). The Court encourages the parties to stipulate to as many facts as possible to avoid

---

[1] The Court notes that many such facts were derived from the parties' own submissions that described the facts as "undisputed". (*See* Doc. 24-1.)

6

disagreement and delay during trial.  This ruling is without prejudice to more specific motions or evidentiary objections.

IT IS SO ORDERED.

Dated:   **April 28, 2023**

_____
UNITED STATES DISTRICT JUDGE