UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.G.1, et al., | Case No. 1:16-CV-1914-JLT-SAB |
| Plaintiffs, | ORDER ON MOTIONS IN LIMINE |
| v. | (Docs. 83, 84, 85, 89, 90, 91, 92) |
| CITY OF FRESNO, et al., | |
| Defendants. | |

Plaintiffs' claim the defendants acted negligently when Officer Zebulon Price shot Raymond Angel Gonzalez following a foot chase in March 2016. Both parties have submitted motions in limine for resolution before trial, which is scheduled to begin on June 21, 2023. For the reasons set forth below, the Court rules on each of the pending motions as follows.

**LEGAL STANDARD**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 4 (1984). The Ninth Circuit has explained that motions in limine allow parties to resolve evidentiary disputes ahead of trial "before attempted use of the evidence before the jury." *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009). Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

1

1  "A better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as
2  opposed to ruling on a motion in limine. *Sperberg*, 519 F.2d at 712. The Court "is almost always
3  better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart*
4  *Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).

5  Nevertheless, motions in limine are "an important tool available to the trial judge to
6  ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v.*
7  *Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997). "[A] motion in limine
8  should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland*
9  *Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. *See*
10 *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will bar use of the
11 evidence in question only if the moving party establishes that the evidence clearly is not
12 admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

13 The rulings on the motions in limine made below do not preclude either party from raising
14 the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a
15 change of circumstances that would make the evidence admissible, such as for impeachment or if
16 the opponent opens the door to allow for its admissibility. In this event, the proponent of the
17 evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the
18 rulings made here are binding on all parties and their witnesses and not merely on the moving
19 party.

20 **MOTIONS**

21 **A.    Defendants' Motion No. 1 to Limit Use of Video Evidence (Doc. 83)**

22 A key piece of evidence in this case will be the body camera video ("BCV"), which was
23 worn by Officer Zebulon Price ("Defendant Price") during his foot chase of decedent Raymond
24 Gonzalez. Defendants ask that any presentation of the BCV be in "real time only without slow
25 motion, screen shots or any other method or format which would alter the original video." (Doc.
26 83 at 1.) Defendants argue that altering the video would be unduly prejudicial because it would
27 be an "unrealistic presentation of the evidence" that improperly uses "the benefit of 20/20
28 hindsight." (Doc. 83 at 3–4.)

2

Plaintiffs argue that viewing the BCV slowed down and with freeze frames would "aid [the jury] in making a determination as to whether the conduct of Defendant Price was reasonable" and would not otherwise be prejudicial. (Doc. 101 at 5–6.) Plaintiffs further evince an intent to use the slowed BCV to impeach Price (Doc. 101 at 6).

Defendants cite recent decisions in the Fifth and Tenth Circuits, which they describe as holding that "it constitutes reversible error to permit a jury to view [BCV] in slow motion, using screen shots or in any manner or format other than the actual speed and conditions under which the involved officer experienced the incident at the time." (Doc. 83 at 4–6, citing *Tucker v. Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021); *Cunningham v. Shelby Cnty.*, 994 F3d 761, 766 (10th Cir. 2021), *cert. denied* 142 S.Ct. 711 (2021).) Plaintiffs point out that *Tucker* and *Cunningham* are appeals from grants of summary judgment not jury trials—so they did not consider whether a jury should see this type of evidence. The *Tucker* Court found the trial court erred in relying upon slow motion video and noted,

> After watching the video footage of [defendant] McIntire's sudden takedown of [plaintiff] Tucker and the struggle that followed on the ground, it is easy for us—having the benefit of hindsight and multiple angles of video to scrutinize, frame by frame—to question whether Tucker might have been handcuffed without scuffle or injury if McIntire had immediately verbally consulted with Cisco upon arrival, told Tucker that he was under arrest, and/or repeated Cisco's "put your hands behind your back" instruction to Tucker before forcefully pulling him to the ground.[Fn.] Importantly, however, the legal reasonableness of a police officer's use of force—for purposes of the Fourth Amendment and qualified immunity—**is not evaluated with the benefit of hindsight. Rather, our focus is on the officers' reasonable perception of the events at issue, as they happened, without the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom.**

*Tucker* at 176, emphasis added, footnote omitted. Likewise, in *Cunningham*, the Court held,

> By relying on screen shots, a court would violate the teaching of *Graham* [*v. Connor*, 490 U.S. 386 (1989)] against judging the reasonableness of a particular use of force based upon 20/20 hindsight. While the district court acknowledged that it "spent much time pinpointing moments" to help it to establish what occurred, it conceded that such moments "do not tell the full story" in light of 'how quickly the incident occurred.' [Cite] **We agree and therefore believe that the district court erred by including several screen shots in its opinion to support its conclusions.**

*Cunningham* at 766–67, emphasis added, internal citation omitted. More relevant is the California Supreme Court's holding in *Hayes*, which appeared to adopt similar guidance from *Graham* that

3

1    reasonableness should be judged from the perspective of a reasonable officer on the scene even in
2    the negligence context.  *See Hayes v. San Diego*, 57 Cal.4th 622, 632 (2013).

3          The Court recognizes the importance of providing the jury with a clear and accurate
4    picture of the facts without undue influence from 20/20 hindsight.  The Court also recalls that the
5    BCV footage in this case is relatively poor quality—certainly poorer than Price's actual vision at
6    the time of the encounter—such that altered video may be appropriate to provide an accurate
7    picture to the jury.  Several courts within the Ninth Circuit have granted motions in limine
8    requesting admission of altered or enhanced police encounter video footage, so long as an expert
9    testified as to the alterations or so long as the parties crafted a stipulation to read to the jury
10   regarding the alterations.  *See Zeen v. Cnty. of Sonoma*, No. 17-CV-02056-LB, 2018 WL
11   3769867, at *3 (N.D. Cal. Aug. 9, 2018) (slowed video of police encounter admissible at trial);
12   *Hernandez v. City of Los Angeles*, No. 219CV00441CASGJSX, 2022 WL 16551705, at *12
13   (C.D. Cal. Aug. 1, 2022) (allowing defendant city to show jury slowed and zoomed footage of
14   non-party decedent driving with a shotgun before police opened fire).

15         Ultimately, the Court cannot conduct the appropriate Rule 403 balancing analysis without
16   reviewing the specific altered footage that Plaintiffs intend to offer at trial.  Thus, the Court
17   **RESERVES RULING** on this motion until specific altered footage is presented.  Any party
18   intending to offer altered video footage **SHALL**, if the parties cannot agree as to the specific
19   footage's admissibility after meeting and conferring in good faith, present it to the Court outside
20   of the presence of the jury. At that time, the moving party **SHALL** be prepared to present the
21   original video and the altered video to facilitate comparison.

22   **B.      Defendants' Motion No. 2 to Exclude Evidence of Prior Officer Involved Shooting**
23         **(Doc. 84)**

24         In 2016, Price was named as a defendant in *Centeno v. Fresno*, No. 1:16-cv-00653-DAD-
25   SAB—another lawsuit in this district with an officer-involved shooting.  Plaintiffs' counsel in this
26   case was also plaintiffs' counsel in *Centeno*, and Plaintiffs have brought evidence from *Centeno*
27   into this case, including the Rule 26 report of Plaintiffs' police practices expert and depositions of
28

4

Price and his supervisor, Sergeant Walter Boston. (Docs 25-9, 25-11, and 25-12.)[1]

Defendants argue that evidence of the shooting in *Centeno* should be excluded in this case because it constitutes improper character evidence under Federal Rule of Evidence 404(a) that would result in undue prejudice under Federal Rule of Evidence 403. (Doc. 84 at 4.) Federal Rule of Evidence 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Federal Rule of Evidence 404(b).

Evidence of a separate police shooting is admissible under Federal Rule of Evidence 404(b) as "other act" evidence if the following conditions are met: "(1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged." *Dominguez v. City of Los Angeles*, 836 F. App'x 489, 492 (9th Cir. 2020) (citing *Duran v. City of Maywood*, 221 F.3d 1127, 1132–33 (9th Cir. 2000).) Even if the evidence is admissible pursuant to Rule 404(b), it may still be excluded pursuant to Federal Rule of Evidence 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Duran*, 221 F.3d at 1133.

Plaintiffs argue that the shooting in *Centeno* meets the *Duran* factors and demonstrates Price's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in the Gonzalez shooting. (Doc. 102 at 3.) However, simply listing the acceptable bases to introduce this type of evidence, without analysis, does not constitute even a half-hearted attempt to meet the evidentiary showing.

Plaintiffs offer no explanation as to how the prior incident bears on these permissible factors. Plaintiffs concludes that the prior shooting bears proves the "material issue" that "Defendant Price[ ] [has a] propensity for excessive force." (Doc. 102 at 5.) Use of the prior

---

[1] Defendants represent, and Plaintiffs do not otherwise contend, that *Centeno* was dismissed without prejudice after the negligence claim was remanded back to state court and the parties reached an economic settlement with no admission of liability or fault. (Doc. 84 at 3.)

incident to show "propensity" is plainly improper under Rule 404. Furthermore, the probative value attached to Defendant Price's actions in the *Centeno* case is marginal at best, while the danger of unfair prejudice is overwhelming. Thus, the Court thereby **GRANTS** Defendants' motion to exclude evidence regarding Defendant Price's alleged conduct in *Centeno*.

**C.     Defendant's Motion No. 3 to Limit Testimony of Plaintiff's Expert Roger Clark (Doc. 85)**

Plaintiffs designated Roger Clark as their police practices expert on June 12, 2018. Though expert depositions were never taken in this case, Defendants have submitted Mr. Clark's Rule 26 report along with a motion to limit Mr. Clark's testimony. (Docs. 85, 85-1.) Defendants complain that Mr. Clark "attempt[s] to render opinions on virtually every aspect of police conduct" such that his opinions are ultimately "so broad as to be devoid of meaning." (Doc. 85 at 6.)

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which allows a witness qualified as an expert by "knowledge, skill, experience, training, or education" to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Ev. 702.

When offering a potential expert witness, the burden rests with the offering party to show that the expert's testimony meets the conditions of Rule 702. *Cooper v. Brown*, 510 F3d 870, 942 (9th Cir. 2007).

1.      Decedent's State of Mind

Defendants first take issue with Mr. Clark's opinion in his Rule 26 disclosure as to the decedent's state of mind. (Docs. 85 at 7, citing Doc. 85-1 at 5.) In his expert disclosure, Mr. Clark writes that "Mr. Gonzalez. . . appeared confused as he also appeared to writhe in pain."

6

(Doc. 85-1 at 5.)  Defendants argue that this is improper speculation, particularly given the fact that the jury will be shown video footage of the incident and come to their own conclusions about what it shows.  Plaintiffs argue that Mr. Clark should be able to testify as to the "facts and data" leading to his conclusions, and that decedent's state of mind is a "fact" of the case which Mr. Clark "applied . . . [as] part of his methodology which helped him arrived to his opinions."  (Doc. 103 at 6.)

The Court disagrees.  Though Mr. Clark's interpretation of the decedent's mental state may have ultimately impacted his conclusions, it is presented in the Rule 26 report as a conclusion.  Mr. Clark has not been designated as an expert in human behavior, psychology, or expression. Notably, however, his interpretation of the decedent's mental state is not within the purview of his expertise. Even if this were his expertise—and it is not—there is no showing that the decedent's metal state, to the extent that it can be adduced from the evidence, is not within the capacity of lay jurors.  *See United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993).  The Court therefore **GRANTS** Defendants' motion to exclude testimony from Mr. Clark as to the decedent's state of mind.

    2.    <u>Mr. Clark's opinion that Defendant Price's use of a handgun was excessive and unreasonable</u>

Defendants assert that "unless expressly precluded . . . Roger Clark will inevitably attempt to inform a jury" that the officer's use of force was unreasonable or excessive.  (Doc. 85 at 8.)  It appears that this concern derives from Mr. Clark's prior testimony in unrelated cases of excessive force allegations.  Plaintiffs do not oppose the motion as to this opinion; they agree that "an expert in excessive force cases should not be permitted to opine on the reasonableness of the shooting."  (Doc. 103 at 6.)  As such, Plaintiffs state that Mr. Clark will not offer opinions as to the reasonableness of the shooting at trial.  The Court therefore **GRANTS** the defense's motion as to this issue per the party's apparent agreement.

    3.    <u>Mr. Clark's opinion as to Defendant Price's "deliberate indifference"</u>

Defendants express concern that Mr. Clark will use legal phrases, including "unreasonable," "excessive," and "deliberate[ly] indifferent," and will "attempt . . . to opine on

7

1  whether [the decedent] posed an 'imminent lethal threat' to Price at the moment when the officer
2  fired his service weapon." (Doc. 85 at 8.) Plaintiffs counter that Mr. Clark is qualified to speak
3  to whether Price acted with deliberate indifference because the Peace Officers Standards and
4  Training ("POST") makes reference to police officers acting with reverence for human life.
5  Plaintiffs further claim that Mr. Clark is qualified to testify regarding whether the decedent posed
6  an imminent lethal threat because Mr. Clark would render that opinion "based on Basic POST
7  guidelines" and because the jury is "not familiar with . . . what constitutes an 'imminent legal
8  threat'.") (Doc. 103 at 6–7.) Plaintiffs fail to explain how exactly Mr. Clark's expertise with
9  POST qualifies him to give these opinions, and they otherwise offer no case law in support of
10 their position.

11 The parties are reminded that no expert will be permitted to offer any opinion without
12 proper foundation. Further, no opinions will be permitted where they concern matters well within
13 the understanding of the average juror, for which "expertise" adds no value. *United States v.*
14 *Finley*, 301 F.3d 1000, 1007–08 (9th Cir. 2002). At this juncture, the Court is unconvinced by
15 Plaintiffs' assertion that a jury cannot analyze for itself what constitutes an imminent lethal threat. No
16 expert testimony will be permitted on that subject without a sufficient showing at trial that it is
17 necessary to aid the jury.

18 As to the use of legal phrases, the Ninth Circuit has repeatedly affirmed that expert
19 witnesses cannot give opinions as to legal conclusions in such a way that "attempts to substitute
20 the expert's judgment for the jury's." *United States v. Diaz*, 876 F.3d 1194, 1196–99 (9th Cir.
21 2017). An expert's use of words with "specialized meaning" in the law may therefore be
22 impermissible. *Id.*; *see also Holley v. Gilead Scis., Inc.*, No. 18-CV-06972-JST, 2023 WL
23 2469632, at *4 (N.D. Cal. Feb. 27, 2023).[2] "Deliberate indifference" is obviously a phrase with
24 specialized legal meaning, so it will be excluded. *See M.H. v. Cnty. of Alameda*, No. 11-CV-
25 02868-JST, 2015 WL 54400, at *2 (N.D. Cal. Jan. 2, 2015) (excluding the use of "deliberate

---

[2] Experts may, however, opine as to the applicable standards, customs, or practices applicable to the conduct at issue. For example, the Ninth Circuit has allowed expert "testimony that Defendants deviated from industry standards," which "supported a finding that they acted in bad faith," where the expert "never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

8

indifference" and citing cases). Opinions as to whether Defendant Price's actions were "reasonable" will also be excluded, as they would impermissibly intrude on the province of the jury in this case.

### 4. Mr. Clark's opinion as to alternative, non-lethal options

Defendants suggest that Mr. Clark may testify that Defendant Price should have utilized a Taser or other non-lethal options before resorting to deadly force. They object to this testimony on the basis that Mr. Clark is not qualified to offer it. (Doc. 85 at 9–10.) Defendants point to several instances where other courts have found Mr. Clark unqualified to offer expert opinions on TASER use. *See Valtierra v. Los Angeles*, 99 F.Supp. 3d 1190, 1197 (C.D. Cal. 2015); *Godinez v. Huerta*, 2018 U.S. Dist. LEXIS 73623, *10 (S.D. Cal. 2018). Plaintiffs do not offer a response as to this specific issue. Here, Mr. Clark will not be permitted to testify as to Tasers without first establishing proper foundation, including his qualifications as to that topic. Moreover, of course, Price was not obligated "to choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Hayes v. Cnty. of San Diego*, at 632 (2013) quoting *Brown v. Ransweiler*, 171 Cal.App.4th 516, 537–538 (2009). Notably, the Ninth Circuit has affirmed "that Price's use of force was objectively reasonable as a matter of law." (Doc. 42-3 at 3.) Thus, unless the pre-shooting events not considered by the Ninth Circuit's ruling as to the Fourth Amendment claim bear on the reasonableness of Price using his firearm when he did so, (*Hayes* at 639), the fact that using a taser would have been *more* reasonable, is not pertinent and will not be admitted.

### 5. Testimony regarding the Fresno Police Department

Defendants seek to preclude Mr. Clark's testimony regarding any action taken or not taken by the Fresno Police Department with respect to this incident. (Doc. 85 at 10.) Plaintiffs respond that Mr. Clark will not be giving such opinions. (Doc. 103 at 6.) The Court therefore **GRANTS** Defendants' motion per the parties' agreement.

### 6. Medical Care

Defendants seek to preclude any testimony regarding Defendant Price's provision (or lack

thereof) of medical care. (Doc. 85 at 10.) Plaintiffs agree that Mr. Clark will not offer any such testimony. (Doc. 103 at 6.) The Court therefore **GRANTS** Defendants' motion per the parties' agreement.

**D.     Plaintiffs' Motion No. 1 to Bifurcate Liability and Damages (Doc. 89)**

Plaintiffs seek to bifurcate the trial into liability and damages phases.[3] Plaintiffs argue that some issues relevant to damages—including the decedent's criminal history—would be "extremely prejudicial if they are brought out during the liability phase of this action." (Doc. 89 at 3.) Defendants oppose bifurcation on the grounds that there is evidence relevant to both liability and damages, that bifurcation would not save significant time, and that any potential prejudice to either party could be cured with limiting instructions. (Doc. 96 at 4–5.)

A district court may "order a separate trial of one or more separate issues" if it concludes that doing so would be convenient, "avoid prejudice," or "expedite and economize" the proceedings. Fed. R. Civ. 42(b). "Absent some experience demonstrating the worth of bifurcation," however, "'separation of issues for trial is not to be routinely ordered.'" *Hamm v. Am. Home Prods. Corp.*, 888 F. Supp. 1037, 1039 (E.D. Cal. 1995) (quoting Fed. R. Civ. P. 42, Advisory Committee Notes to the 1966 Amendment). The party who moves to bifurcate a trial has the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992). The decision is left to the district court's discretion. *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir. 1995), *aff'd on a separate question*, 517 U.S. 830 (1996).

Plaintiffs contend that several pieces of evidence potentially relevant to the damages inquiry are irrelevant to the issue of liability and otherwise highly prejudicial. (Doc. 89 at 5–8.) This evidence includes:

- The decedent's criminal record.

---

[3] The Court reads Plaintiffs' motion as a request to bifurcate the trial to separate the liability portions of trial from both compensatory and punitive damage issues. If Plaintiffs intended to request bifurcation only as to punitive damages and the parties cannot reach agreement on the issue, Plaintiffs may file a more specific motion by June 9, 2023.

- That decedent may have been a suspect in a shooting that occurred the week before his death.
- That decedent, on the date of the incident with Defendant Price, was carrying a backpack containing a disassembled assault rifle.
- The Decedent's mug shot, as well as his potentially gang-related tattoos; and
- The autopsy report in this case, which found methamphetamine and THC in decedent's system at the time of death. (Doc. 89 at 5–8.)

Plaintiffs contend that much of this evidence is not relevant to the question of liability because Defendant Price was unaware of the decedent's past at the time of the shooting. Plaintiffs also express concern about the presentation of evidence concerning their own criminal histories and prior bad acts. Plaintiffs cite *Estate of Diaz v. Anaheim* in support of their argument. 840 F.3d 592, 598–604 (9th Cir. 2016).

*Estate of Diaz* involved a similar lawsuit by plaintiffs whose family member had been shot and killed by a police officer. The district court in *Estate v. Diaz* bifurcated punitive damages from the rest of the trial, but not compensatory damages; as such, the jury was exposed to evidence regarding the decedent's gang affiliation and drug use before liability was determined, despite the court's pre-trial finding that these issues were not relevant to the issue of liability. 840 F.3d at 597. The Ninth Circuit reversed the jury's eventual judgment for the defense on the grounds that the gang and drug evidence was presented in a particularly prejudicial manner and had no bearing on liability. 840 F.3d at 602 ("where, as here, graphic and prejudicial evidence about the victim has little, and in large part no, relevance to the liability issue, district courts should bifurcate"). For these reasons, *Estate v. Diaz* is distinguishable from the instant case.

Unlike in *Estate v. Diaz*, Defendants assert that many of the contested issues are relevant to both liability and damages. For example, that the decedent was under the influence of methamphetamine at the time of his encounter with Defendant Price may provide support for the defense's narrative that the decedent was acting erratically. Similarly, that decedent was on parole for armed robbery and would be returned to prison if caught with a firearm may address

11

the disputed issue of whether he was attempting to flee from or seeking to harm Officer Price. (Doc. 96 at 3–4.)  This potential overlap weighs "in favor of one slightly longer trial." *Matsushita Elec. Indus. Co., Ltd. v. CMC Magnetics Corp.*, No. 06-04538, 2007 WL 219779, *2 (N.D. Cal. Jan. 29, 2007).

Though some of this evidence may be prejudicial to Plaintiffs, it is not clear at this juncture that the prejudice will be unfair or outweigh the evidence's probative value. *U.S. v. Hanley*, 203 F3d 1166, 1172 (9th Cir. 2000) ("relevant evidence is inherently prejudicial, but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter.")  The Court will appropriately analyze the probative value of the offered evidence at trial and will not allow any party to "stretch" the Court's evidentiary rulings as the defense did in *Estate v. Diaz*. *See* 840 F.3d at 600.  As such, "the court is not persuaded that the jury in this case will be unable or unwilling to distinguish between evidence pertaining to liability or culpability and evidence pertaining to the measure of damages.... [A]ny concerns about potential prejudice ... may be directly addressed, and the prejudice cured, with appropriate limiting instructions." *Hamm v. Am. Home Prods. Corp.*, 888 F. Supp. 1037, 1039 (E.D. Cal. 1995).  Plaintiff's motion to bifurcate the trial is thereby **DENIED**.

E.  **Plaintiff's Motion No. 2 to Exclude Evidence Not Known to Defendant Price at the Time Force was Used (Doc. 90)**

Related to the issues raised in Plaintiffs' Motion to Bifurcate, Plaintiffs seek to exclude evidence about the decedent that Defendant Price did not know at the time of the pursuit and shooting, as well as evidence relating to Plaintiffs' own criminal records.  As with the motion to bifurcate, Defendants argue that much of this evidence is relevant to liability and may be admissible for other purposes, such as proving "motive, intent, knowledge, and lack of mistake on the part of decedent."  (Doc. 97 at 5, citing Fed. R. Ev. 404(b)(2).)

Defendants are correct that Rule 404(b) allows evidence of prior conduct where it is not offered as propensity evidence.  Rule 609 may also permit admission of Plaintiffs' criminal histories if they testify.  Fed. R. Ev. 609.  However, in many respects, Defendants conclude that certain evidence would be admissible under 404(b) without explaining how.  For example, the

fact that the decedent had a criminal history does not demonstrate necessarily that he knew reaching toward his pocket would result in being shot. Seemingly, that type of knowledge may depend upon past interaction with police rather than the mere fact of being convicted of a crime.

To the extent that the defense establishes specific foundation <u>in advance of offering evidence about these prior acts</u>, the evidence *may* be admitted at trial. As such, the Court **RESERVES** ruling on this topic until trial.

F. **Plaintiff's Motion No. 3 to Exclude Drug Testing Results and Related Evidence (Doc. 91)**

Plaintiffs object to the presentation of post-mortem drug test reports of the decedent, any suggestion that the decedent was under the influence of drugs at the time of his death, and "any other evidence of illegal drugs, including "evidence of drugs as to Plaintiffs or family members." (Doc. 91 at 3.)

Plaintiffs request exclusion of the drug testing reports and testimony as to the effects of the substances detected in the decedent's system—including methamphetamine and THC—because Defendants have not noticed a toxicology expert. (Doc. 91 at 4–5.) In particular, Plaintiffs oppose testimony regarding the "probable pharmacological effects of certain amounts of particular types of drugs and whether they would or would not cause [a] person to be under the influence" at the time of the shooting. (Doc. 91 at 5.) Defendants agree that no noticed expert is qualified to speak about the *effects* of the drugs detected in the decedent's system, and they do not intent to elicit testimony as to those effects. (Doc. 98 at 2.) Because the parties appear to be in agreement as to testimony regarding the effects of substances in the toxicology report, Plaintiffs' motion is **GRANTED IN PART** on that issue.

As to the toxicology reports themselves, the defense intends to call Dr. Michael Chambliss, the forensic pathologist who conducted the decedent's autopsy, to testify as to the substance quantities found in decedent's blood. (Doc. 98 at 2.) Defendants represent that Dr. Chambliss will testify "solely with respect to his findings," which they argue are "highly relevant" to both liability and damages issues, particularly when paired with Defendant Price's testimony as to the decedent's behavior at the time of the shooting. (Doc. 98 at 2–3.) It appears

1  that there *may* be proper foundation for Dr. Chambliss's testimony.  Because Dr. Chambliss's
2  specific testimony is not the subject of Plaintiffs' motion, the Court declines to analyze its
3  admissibility at this time.  Plaintiffs' motion is therefore **DENIED IN PART** as to the request for
4  a wholesale exclusion of the toxicology reports.  This denial is without prejudice to a more
5  specific motion, if appropriate, at trial.

6  Finally, Plaintiffs represent that testimony or evidence regarding their own potential
7  involvements with drugs is improper because "there is no evidence from any expert or witness
8  that could testify as to any of the Plaintiffs['] drug issues . . . and any such evidence is more
9  prejudicial than probative." (Doc. 91 at 6.)  This is the entirety of Plaintiffs' argument on this
10 point.  This does not meet Plaintiffs' burden of establishing that exclusion would be appropriate.
11 Plaintiffs' motion as to evidence of their own drug involvements is therefore **DENIED**.

12 **G.     Plaintiffs' Motion No. 4 to Preclude Defense Expert George T. Williams from**
13 **       Opining on Defendants' Negligence (Doc. 92)**

14 Defendants have noticed George T. Williams as a defense expert on police practices.
15 According to Plaintiffs, Mr. Williams "will attempt to offer opinions that the conduct of
16 defendant [Price and] his pre-shooting tactics were not negligence and that such actions were not
17 the [decedent's] cause of death." (Doc. 92 at 3.)  Defendants agree that no expert, including but
18 not limited to Mr. Williams and Mr. Clark, "may offer any opinion(s) that Officer Price was or
19 was not negligent or that the death of [the decedent] was caused by any officer negligent." (Doc.
20 99 at 2.)  Instead, per Defendants, experts "may [] testify as to best practices and training
21 standards within law enforcement," but no expert "may opine as to whether Officer Price violated
22 any such practices/standards, acted negligently[,] or caused the death of [the decedent]." (Doc.
23 99 at 2.)  Thus, it appears that the parties agree; however, the defense asserts that the parties have
24 not conferred about this issue.  The Court therefore **RESERVES** ruling on this motion until the
25 parties can confer and clarify whether there is actually a dispute for the Court to resolve.

26                                              **ORDER**
27 Based upon the foregoing, the Court **ORDERS**:
28 1.     Defendant's motion in limine number 1 (Doc. 83) is **RESERVED**.

    2.    Defendant's motion in limine number 2 (Doc. 84) is **GRANTED**.

    3.    Defendant's motion in limine number 3 (Doc. 85) is **GRANTED**.

    4.    Plaintiff's motion in limine number 1 (Doc. 89) is **DENIED**.

    5.    Plaintiff's motion in limine number 2 (Doc. 90) is **RESERVED**.

    6.    Plaintiff's motion in limine number 3 (Doc. 91) is **GRANTED IN PART and DENIED IN PART**, as set forth above.

    7.    Plaintiff's motion in limine number 4 (Doc. 92) is **RESERVED**.

IT IS SO ORDERED.

Dated:   **June 1, 2023**

UNITED STATES DISTRICT JUDGE